Case No. 245822, John Shufeldt v. Baker Donelson, Bierman, Caldwell & Berkowitz, P.C. Oral argument not to exceed 15 minutes per side. Mr. Winters for the appellate. We also have a substitution for appellee counsel. Mr. Leibach will be arguing for Mr. Sims. My name is Gus Winter of the Nashville Bar. I represent the plaintiff appellant, Dr. John Shufeldt, in this legal malpractice case. I'd like to reserve five minutes of my time for rebuttal. The primary question before this court is whether there is a genuine dispute, a material fact, regarding the status of Enhanced Equity Fund, or EEF, as the controlling shareholder of NexCare. The benchmark test for controlling shareholder status is provided by the Delaware Supreme Court in the case of Kahn v. Lynch, 1994, which defines a controlling shareholder as either A, the majority shareholder, or B, a minority shareholder who exercises control over the business affairs of the corporation. We submit that there is ample material evidence to support the conclusion that EEF, in the transaction at issue, exercised control over the corporation NexCare. We have in the record that EEF's affiliate, Mr. Kostuchenko, who was also serving as NexCare's chairman of the board, rallied the troops, contacted the directors of NexCare on October 5, late night, emergency emails, called a meeting that was taken on the next day in which the board voted to accept NexCare's offer to purchase a stake in the value of NexCare at a discount price. EEF set the terms. They drafted the documents, although they had NexCare pay for them. They had a valuation done for its sole use and benefit, which was paid for by NexCare. All this was done within a matter of less than 24 hours, and EEF got the benefit of the bargain. There is ample evidence that EEF was in control of the whole show. There is expert testimony from one of the attorneys who testified in this case. I'm not sure I follow why Steen isn't an independent director, and I thought you conceded that below. Yes. Part of it is he's – I think the testimony was from my client was he didn't really have any qualms about the relative independence of Mr. Steen. I would state that – Then shouldn't we treat him as independent at that point? I mean, that's fine, but it really doesn't pertain to the ultimate resolution of the case. No, I get that. I'm just trying to think through whether any of the directors was beholden to EEF, and I don't see how any of them were. And we're not saying that they were beholden to any of the – Okay. To EEF. So then it comes down to what evidence you have that EEF was a controlling shareholder. Either – I agree with 25%. It's an either-or, right? So they could have 51%, or you could show what I think you're arguing, which is they exercised control over the business affairs. So I'm just saying from a logic perspective, and maybe I'm wrong and you should correct me, but this – wasn't the seven cents to two cents move presented to the directors, all of whom seemed independent, all of whom thought it through, and all of whom approved it? Well, first, if you're controlled, you're not independent, and that's cited in our brief. Second, the test is not whether the directors were independent. The test under Convey-Lynch is whether EEF controlled the business affairs of the corporation. And at the time that this case went through discovery of the four non-aligned directors, one was dead, Mr. Steen. One no longer remembered the events. And the two who were alive and testified, one of them testified that based on the information that Mr. Kostuchenko provided to the board within a 24-hour period, that the directors had no choice but to accept EEF's offer or else EEF was going to go out of business. The other director who testified stated that under the circumstances presented, he didn't consider the price offered by EEF to be outrageous. And there were nondisclosures made in terms of the underlying circumstances of NexCare, which EEF chose not to share. The best way that it can be described in terms of what's in the record is the testimony from Mr. DelGaizzo, expert testimony attorney, who said it was clear that EEF was the puppet master in this situation. Again, the acid test is not whether directors are beholden or whether they testify that they consider themselves independent or acting in the best interest of the company. The acid test under Kahn is whether or not EEF controlled the business affairs of the company. And with respect to this transaction, they did everything. They set the price. They drafted the documents. They provided the information. Who hired ArcStone? I'm sorry? Who engaged or hired ArcStone? ArcStone was hired by EEF. It was paid for by NexCare. So what evidence in the record is there that EEF hired ArcStone? The valuation is part of the record. And it states in there that it was for its sole use and benefit. And it is in the record. But I thought it was for the benefit of NexCare. No. Let me cite to the record on that one. I'm glad you asked that question. Exhibit 4. Let's see. It's page 4679, I think. But it's Exhibit 42 to Dr. Schufelt's deposition. And it states... 4679. Sorry. There's a bait stamp over it. So it's hard to read. I'm sorry. But I believe it's page 4 of the exhibit to Dr. Schufelt's deposition. And the purpose, it states as follows. Excuse me. Page 5. This valuation is furnished solely for the use and benefit of Enhanced Equity Fund LP in connection with its consideration of the transaction and is not intended to and does not confer any rights or remedies upon any other person and is not so intended to be used for any other purpose. So... Are you arguing that whether the directors were independent is a disputed issue that should not be decided on summary judgment? Is that part of your argument?  I guess, I mean, my point is we don't concede that a majority of the non-aligned directors were independent. But the larger point is that for purposes of this appeal, it doesn't make any difference whether they were independent or not. Because under Kahn, and in the same case I stated, it states that if you have a controlling shareholder who stands on both sides of the transaction, that is, is the counterparty to the transaction, then the appropriate standard of review is entire fairness review. And as I'm sure the Court's aware, if there is a genuine dispute of fact as to whether or not entire fairness review applies, then the decision granting summary judgment should be reversed. And what the key holding, the second key holding from Kahn versus Lynch, is that if you have a controlling shareholder, and if the controlling shareholder stands on both sides of the transaction, then the entire fairness review standard of review applies. Point stop, end of story. The only modification to that is that if there is a showing that the board was independent and acted to approve the self-dealing transaction, then it's not that the business judgment rule applies. Instead, it's the entire fairness review still applies, but the burden of proof shifts from the controlling shareholder to the complaining party. And either way, we get to entire fairness review. So I know that a lot of argument and a lot of the District Court's time was spent rolling around with this question about whether these... You reserved five minutes of rebuttal. That's a lot. You can use some of it now, or you can save it with your call. Thank you, Your Honor. I'm going to do two more minutes now, if I could. Thank you, Your Honor. And I'm almost to the end point on this. So the takeaway at this point is it doesn't matter whether these non-aligned directors were independent or not. It just matters that it's entire fairness review either way. Look, the business judgment rule, isn't that involved in determining causation here? And you were sort of disparaging the use of the business judgment rule. But don't we have to look at causation, what the outcome of these acts and transactions would have been to determine if summary judgment was appropriately entered here? Yes, I think that's a binary issue. I think if the business judgment rule applies, then Baker Donaldson wins and Dr. Schufelt loses. If the entire fairness review applies, then Dr. Schufelt wins this appeal and Baker Donaldson loses. The last point I would like to make, to save a couple minutes for rebuttal, is that the way that Baker Donaldson is looking at this is that being a controlling shareholder and a self-interested party or self-dealing only leads to entire fairness review if number one, there's a controlling shareholder, but if the opportunity is presented to the other shareholders, that cleanses the whole situation. But the standard is disjunctive, not conjunctive. What about this issue of expert witnesses? Can your client prevail without expert witnesses or is the use of experts out of bounds here or inappropriate? It's not out of bounds and it's typically required. We've stated that in our brief inside of the authority that when there's a causation question in a legal malpractice case, the knee-jerk response is to have expert testimony. But that would go to the statute of limitations and the district judge didn't reach that. No, it would go to causation as well and we cited in our brief the Starwood case and also governing law from Arizona, the substantive law which applies, that in Arizona, expert testimony on causation as well as negligence is typically required and we provide case law on that. The last point I would make before I sit down is the entire fairness review standard applies if either there's a controlling shareholder who is the counterparty to the transaction or there is a controlling shareholder who receives a non-rateable benefit unlike anything that the other shareholders received or if all three of those situations, either and or. Thank you. All right. You'll get two minutes of rebuttal. Thank you very much. Other side. Good morning. Good morning, Your Honors. May it please the Court, Eric Leibach from the law firm Sims Funk in Nashville appearing on behalf of the defendant, Appellee Baker Donaldson. I'd like to start my argument by ending where Judge Clay ended in his questioning of the plaintiff's counsel and that relates to the expert witnesses. Candidly, I was surprised to hear so much argument about Conn v. Lynch and whether the district court applied the correct legal standard because that's not one of the issues that was presented for review by this court in the plaintiff appellant's opening brief. There were only two issues stated in the statement of the issues in that brief. Only one of them related to the summary judgment motion before the court and that was the first issue which solely asked whether the district court erred in declining to consider the opinions of these two attorneys who had been profited as experts and if so, whether that changed summary judgment. There was no issue properly presented to this court regarding whether the court's analysis of the other issues was at error. The only issue presented related specifically to those expert judges. As we laid out in our briefing, there are three independent grounds as to why that particular issue does not cause any concerns here. First, it's been waived due to a failure to develop which portions of the testimony or reports submitted by those attorneys were relevant to this thing. Second, this is inadmissible because it goes to a legal question and I'll circle back to that at the end. Third, even if you consider the experts, it doesn't change the analysis. And because the focus of the plaintiff appellant's argument this morning was on the question of the court's analysis, I'd like to just correct the record there and really lay out how this analysis works, why the district court's analysis of it was correct, and why nothing that these experts have to say changes that analysis, even assuming it hasn't been waived and even assuming it's admissible. And respectfully, we believe it was both waived and inadmissible. So as it relates to Convie-Lynch, the case that was cited and argued repeatedly just a few moments ago, there's no dispute if you have a controlling shareholder and you have a self-interested transaction, entire fairness applies. The problem for Dr. Shufelt is you don't have a controlling shareholder and you don't have a self-interested transaction on the undisputed facts in this case. But he's definitely arguing that EEF's a controlling shareholder. He is absolutely making that argument. The question is, was there record evidence to support that argument? And on that point, I respectfully disagree with plaintiff's counsel. The test is not whether a particular shareholder controls the business. You can absolutely – oh, sorry, Judge. No, I'm sorry. Just to go back to what you said before you get to that, entire fairness applies if they're a controlling shareholder. And a self-dealing transaction. Of course. Yes. And then otherwise business judgment rule? Yes. And as you heard from plaintiff appellant, if the business judgment rule applies, that's it. The district court got it right. This case should be affirmed and there's no argument about that. Right. If entire fairness, it's a harder road. You might still win, but it's a harder road. But we'd have to go to trial on that, and I don't think we're disputing that. If entire fairness applies, then we would need to go to trial. We did not move for summary judgment on the grounds that entire fairness, we would prevail under that. We moved for summary. Okay, that's helpful. Now go back to what you were saying. Sorry. So as it relates to the business judgment rule, there are threshold tests to determine if you're a controlling shareholder and to determine whether this is a self-interested transaction. And those tests kind of get skipped over in the plaintiff's analysis. So with the first test, independence, and it's clear under Delaware law, we cited several cases for this. I would specifically refer the court to the Orman v. Coleman case. That's a 2002 Delaware chancery opinion about a going private transaction, and also the KKR financial holdings case, which is a Delaware chancery opinion from 2024. There's several others we cited throughout. But it's clear the test in Delaware law is not who controls the day-to-day operations of the company. The test is who controls the board of directors. And to make that determination, you have to do a director-by-director analysis. Can you talk to me about Steen? Because that's the only one I was a bit confused by. He was appointed by EEF. He was appointed by EEF. However, in the statement of undisputed material facts, which is really dispositive of this motion for summary judgment, and this is docket entry 235, it was undisputed. Do you know what the R number is for that? The record number? I do not have that in front of me. I can grab it. I've got it in my binder. That's fine. I'll find it. Go ahead. It's docket entry 235, and as it relates to Steen, I would direct the court to paragraphs 10, 11, 12, and 13, which state that Steen was independent. Wait. 10 through 13? 10 through 13, Your Honor. Yes, sir. Okay. Go ahead. They state that Steen was independent. They state that Steen had no prior affiliation with EEF. They state that Steen was not beholden to EEF, and they state that Steen was never pressured to vote in any particular way. All of those facts are undisputed and were undisputed before the district court. Okay, and your friend pretty much conceded that when he came up here.  And I will note, while we're on the statement of undisputed material facts, the three other directors who would need to be either interested, and there's no argument they were interested, or lacking independence from EEF are the three directors who were appointed by plaintiff Shufelt. Right. And as it relates to them, there's an attempt at a dispute on the question of their independence, but it is admitted that they had no prior relationship with EEF. It is admitted that they had no family or business ties to EEF, and it's also admitted, this is very important, this is paragraph 9 of the statement of undisputed material facts, it is undisputed that all three of those directors voted in the company's best interest when they approved this transaction. I mean, he basically conceded that, Mr. Winter, when he was up here. So, I mean, he kind of, to the extent he was making the argument, he abandoned anything about the directors and just said EEF is a controlling shareholder. There's no record evidence supporting that. All you have are, I guess, there's maybe an attempt at a fraud on the board kind of theory, which, when you have fact supporting, it can sometimes result in entire fairness. But the problem, as the district court correctly noted, is there's no evidence in the record supporting, I think it's four of the five factors for a fraud on the board claim to shift to entire fairness. So, just as a matter of the record before the district court, there was no factual dispute that these directors were independent, that they were disinterested, and that they approved this transaction. And under black-letter Delaware law, that means the business judgment rule applies. Even if it was a controlling shareholder? That's how you determine if they're a controlling shareholder. Under Orman v. Coleman, under KKR Financial Holdings, you have to look at whether they are controlling the actions of each individual board member. And in those cases, the court goes through each board member individually to determine whether they were interested in the transaction or lacked independence from the purported controlling shareholder. So, the language exercises control over the business and affairs of the corporation includes you have to look at the board of directors? Yes. That has to be a part of the analysis? That has to be a part of the analysis. Under Orman v. Coleman, under KKR Financial Holdings, Oracle Corporation, which was cited, I believe, on the fraud on the board piece, but in the beginning portion of it, addressed the independence of directors when determining that someone was not a controlling shareholder. And it also went through director by director. But it's our position that the controlling test under Delaware law is that you go director by director. Again, though, I want to make the point, the issue of... Let me just ask you on shifting. Under your theory of the case, is the admissibility question a red herring? It's ultimately a red herring. Do we even have to address it, I guess, under your theory of the case? Well, I don't think you even need to get there because it's been waived. I mean, there's two reasons. There's three completely independent grounds why the expert testimony, which is the only issue presented to this court, once again. There's been no issue about the district court applied the wrong standards, they didn't apply CON, they misinterpreted Delaware law. That's not the issue presented to this court. And so I think under Sixth Circuit precedent, any issues about whether the court used the right analysis has been waived. But turning to those expert opinions, there's three independent grounds. Any one of them is enough. So you can decide it doesn't matter what the experts say, the undisputed facts are the undisputed facts. You can decide it's inadmissible, and I'll address why it's inadmissible in a moment if you'd like. Or you can find that he waived any attempt to rely on that. Is your first one, assuming it's admissible, it still doesn't make a difference? Is that what your first argument was just now? You said there were three doors. The expert reports are the only issue that's been presented. I got that. You said that. I'm trying to ask whether admissibility matters to this case under your theory of the case. In other words, you can make the argument, even if we say they should have been admitted, the testimony would not have made a difference. I'm trying to figure that out. That is absolutely one of our arguments. That is our third argument. It is waiver and then admissibility, and then if admitted, does it make a difference? So I think all three of those things are true. So let me turn to the question of admissibility and respond to some of your questions, Judge Clay, about the admissibility of those expert opinions. It is absolutely the case in legal malpractice cases that it is sometimes appropriate to have expert testimony. We don't dispute that. For example, questions about things like standard of care, those go beyond the scope of the knowledge of a typical juror. And it's helpful, the same way it's helpful to have a doctor come in and say a reasonable doctor would have caught this. It's helpful to have an attorney come in in some circumstances and say a reasonable lawyer would have done this. In certain kinds of cases, it can even be appropriate, these are the causation cases that get cited in the reply brief. You certainly need a lawyer to explain to a jury how a particular failure of the defendant attorney in a malpractice case would have changed the result. So, for example, you have cited by Dr. Schufel a series of cases, I think probably the best one to make this point is the Bork case, B-O-U-R-K-E, which involved an allegation that a criminal defense attorney failed to ask the right questions in voir dire. And the court, not unreasonably, said, okay, you need an expert to explain how voir dire questions would have resulted in a not guilty verdict, and tie those two together. The issue here, as it relates to these particular attorneys, is it goes beyond any testimony about the standard of care or even about the causation of the particular error. It goes down to attempting to predict, based on applicable legal principles and the attorney's interpretation of the facts, that this result would have been reached had the case gone to trial. That is not permitted under any of the case law cited in Dr. Schufel's reply brief. That's not permitted in any case law I'm aware of. To the contrary, all of the case law, and we cited several cases to this effect in the brief, I would particularly direct the court to its prior opinion in Zipkin, which is a Sixth Circuit case. There's a Western District, Tennessee case, I-Unknown versus AutoZone, I think is also particularly on point here, that says you can't have an expert to opine on legal issues. And the issue, as it relates to these two attorneys, is, as it relates to the business judgment rule, they are effectively trying to step into the shoes of judge and jury and tell the jury what results you should have reached. And that's simply inappropriate. If the underlying action had gone to trial, under Dr. Schufel's theory, those issues would have been decided by the judge and the jury. There's no need for an attorney to explain what that is. The jury can decide for themselves. That's the proper circumstance here. So that's why it's inadmissible. I want to also touch on the second piece of the puzzle that results in entire fairness. So not only do you have to have a controlling shareholder, of the reasons I just explained, you don't have that here, regardless of what these attorneys say, because you have director independence. You also have to have a self-dealing transaction. The controlling shareholder must use that control to extract a benefit unique to the controlling shareholder. If it's open to everyone, they're not getting special treatment for themselves. They're simply opening it up to everyone. And this was not something, again, that was disputed in the opening brief, so we did not discuss it in great detail in our response, but I would direct the court to the cases that were cited by the district court on this opinion. I think the leading case is called Watchmark. And it makes it very clear that when you have exactly this kind of transaction, where a corporation issues enough stock that everyone can buy their pro rata share and avoid dilution, any disparate treatment is not the result of self-dealing. It's not the result of the kind of transaction that Delaware courts look at askance. It is the result of that person choosing not to participate. And on that issue, the only testimony that you have from either of these experts is kind of the unsubstantiated claim, well, Dr. Shufelt couldn't afford to buy the share, so therefore it was self-dealing. And there's simply no precedent in Delaware law for the position that you can ignore the fact that it was open to all. So in conclusion, we think these were waived, they're inadmissible, they don't make a difference, and as a result, you don't even need to reach the second issue presented, which is about moot motions. But unless the court has any questions, I'll yield the rest of my time. Thank you very much. Thank you. All right, Mr. Winter, two minutes. All right, thank you, Your Honor. As far as the waiver issue and the admissibility of the expert testimony from the legal malpractice, or the two attorneys... Let's assume we don't even touch that. Why do they make a difference? I mean, experts can't opine on law. I mean, how does it really make a difference here? Because they're not opining on law. Okay, go ahead. If you look at the Eubler affidavit, he says his conclusion is that EEF was the controlling shareholder, and he addresses that that would lead... And his testimony is, I find that because of these facts, and he identifies some sites to the record for all of his facts. His testimony at trial is not going to be, ladies and gentlemen of the jury, this is what the law is. His testimony is going to be that, based on these facts, it's my expert opinion that the negligence of the defendant attorneys was the legal cause of injury to the client. And that is required, in most cases under Arizona law. And in our reply brief, we had lots of authority. And I include again the Starwood case, the Supreme Court of Texas, that the typical response, required response, to a motion for summary judgment in a legal malpractice case is an expert attorney's opinion on causation. And I would, in what little time is left, address the attorney issue. There was no waiver by Dr. Shufelt on that issue. There was waiver on the part of Baker Donaldson. In their brief, their memorandum in motion before the district court, they advised the court that Mr. Hubler's testimony would be anticipated, acknowledged it was going to be admissible, but argued why it shouldn't be credited. After we wrote our brief in response, they changed their position and took completely the opposite perspective and said the testimony is not admissible. And that now... Your red light is on. Okay. And that would be the Summers case, Your Honor, or the Scottsdale case. Thank you very much. Thanks to both of you for your helpful briefs and arguments. We appreciate it.